IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS TSHELTONCHANDLER@GMAIL.COM, TREYLESTER568@GMAIL.COM, LEATHERNECKOPS@GMAIL.COM, FLATRIVERFARMS@GMAIL.COM AND AVERYCOUNTYBLUEGRASS@GMAIL.COM THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 6:23mj34 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher M. Cummings, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

1

2. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), currently assigned to Roanoke, Virginia and have been so employed since November 2003. Prior to being employed by HSI, I served the Department as a Border Patrol Agent from 2000 until 2003. In my current capacity as a Special Agent, I am responsible for investigating crimes relating to the sexual exploitation of children, including but not limited to crimes pertaining to the solicitation and enticement, as well as the importation, advertising, possession, access with intent to view, transportation, receipt, and distribution of child pornography in the Western District of Virginia. My training includes basic, advanced, and on-the-job training in this investigative area. I am familiar with procedures for obtaining and executing federal search warrants and I have led and participated in the execution of numerous search and arrest warrants related to child exploitation and other sexual offenses, firearms and narcotics violations, money laundering, and fraud. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program, the Immigration and Customs Enforcement (ICE) Special Agent Training program, and the Internet Crimes Against Children (ICAC) Task Force Basic On-Line Investigative Techniques Course. As a result of this training and experience, I am responsible for enforcing federal criminal statutes involving the sexual exploitation of children, including offenses under Title 18, United States Code, Section 2252.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2252(a)(1) and (b)(1) (transportation of child pornography) and 2252(a)(4) and (b)(2) (possession or access

with intent to view child pornography) (the "Target Offenses") have been committed by Travers Shelton CHANDLER. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and fruits of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### A. Related Persons

6. The initial "relator" of information in this investigation is referred to as Relator1. Relator1 is the estranged spouse of the investigative subject, Travers CHANDLER. Relator1 resided in Bedford County, Virginia, for several years and then moved to Roanoke County, Virginia in or around the end of 2018. Relator1 and CHANDLER resided together at a residence in Bedford County, Virginia from 2016 until October 2018. Apart from a pre-verbal minor, no other persons resided in the home. In October 2018, CHANDLER moved out of the home in Bedford as part of a marital separation.

7. Travers CHANDLER is the primary subject of this investigation and resides in the Roxboro, North Carolina area. CHANDLER is a United States Citizen, who is approximately 43 years old. He was previously married to a North Carolina resident prior to his marriage to Relator1, who is a Virginia resident. CHANDLER is a professional truck driver by trade and is prone to live in a transient status for large periods of time. For the purposes of this affidavit, the government

3

is initially concerned with CHANDLER's activities for the time period dating from October 2017 until the present.

### B. CHANDLER's Samsung J3 Phone

8. In September 2019, Relator1 provided CHANDLER's old cell phone, a Samsung J3 Android device, to law enforcement after discovering the presence of suspected child sexual abuse material[1] on the device.

9. In 2019, Relator1 observed communications and images of concern while reviewing the phone's contents in relation to her ongoing divorce proceedings with CHANDLER. Specifically, Relator1 observed communications regarding advertisements placed by CHANDLER on Craigslist seeking minor and adult males (16 to 21 years of age) to discuss and consider sex with ▮▮▮▮▮▮▮▮▮▮ ("Minor 1"), who would have been a teenager at the time. These communications were sent from and received by a Google email account TonyDavisDL@gmail.com.

10. Relator1 also observed an image on the phone taken in or around June 2018, which is a photograph of a smartphone lying flat down with the screen facing up. The picture is taken by a second phone, held by a photographer standing over the phone lying down. The phone in the picture shows a photo of Minor 1's face with her tongue out. The photographer's penis is pictured laying over the phone/picture as if it is on Minor 1's face or near her mouth. Relator1 identified the penis in the photo as Chandler's and identified the background as his vehicle.

---

[1] The term "Child Sexual Abuse Material" (or "CSAM") is used synonymously with the term "child pornography," as it more accurately reflects the nature of the exploitation depicted in sexually explicit images of minors.

11. Relator1 conferred with her counsel to obtain advice about the phone. While viewing images on the phone, Relator1 and counsel observed several images in the phone's photograph folder, which they suspected were child sexual abuse material.

12. Realtor 1 and her counsel then provided the phone to law enforcement out of concern for the content within. In September 2019, law enforcement took possession and control of the Samsung phone, which is currently in the government's possession. Law enforcement viewed the suspected CSAM images on the phone during a September 2019 meeting at the Roanoke County Police Department.

13. In September 2019, a federal search warrant authorized law enforcement to search the Samsung J3 telephone provided by Relator1. Law enforcement's observations of the phone generally corroborate Relator1's observations and suspicions.

14. The phone contained the following attribution information demonstrating CHANDLER's possession of the telephone:

   a. Numerous continuous texts between CHANDLER and persons within his contact list from fall of 2017 and 2018.

   b. Numerous photographs depicting CHANDLER, his driver's license, his work environment, children, wives, and other related content.

   c. Several self-photos from 2018 of CHANDLER containing geodetic information placing the phone in CHANDLER's possession in the Cave Spring area of Roanoke. The geodetic information is supported by the photographic background.



15. Officers observed further Craigslist communications from the TonyDavisDL@gmail.com account regarding sex with minors, including ▮▮▮▮ and obtained a search warrant for the TonyDavisDL@gmail.com account in February 2020.[2]

16. A forensic review of the phone's contents revealed that the phone contains at least 40 images depicting minors engaged in sexually explicit conduct located within the phone's "cache." A cache is an auxiliary memory from which high-speed retrieval is possible.

17. Several of the sexually explicit images on the phone are part of the phone's "glide cache," which is the image loading and caching library for Android applications, including Google Photos. "Glide" is a media management and image loading framework for Android, the operating system used by CHANDLER's Samsung phone.

18. Metadata for several of these images of interest in the "glide cache" indicate that Google Photos was used to view these images.

19. Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others using Google Photos. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

20. The forensic evidence associated with the images in the "glide cache" on CHANDLER's phone suggests that the child sexual abuse material images contained on the phone

---

[2] The return received from Google for the TonyDavisDL account appeared to contain no data.

were synced to Google photos, thereby transporting the images from CHANDLER's device to Google's cloud-based storage system.

21. The following image descriptions are examples of some of the child sexual abuse material located in the "glide cache" of CHANDLER's device, each of which was accessed in or around June and July 2018:

   a. a prepubescent minor female laying belly down on the bed performing oral sex on an adult male penis;

   b. a prepubescent minor female laying belly down on the bed with her legs stretched, exposing her vagina;

   c. a prepubescent minor female holding the penis of an adult male with both of her hands while he stands, and performing oral sex.

22. Forensic evidence indicates that some of the child sexual abuse material images present in the "glide cache" on CHANDLER's phone were likely accessed using the Google Photos application associated with the tsheltonchandler@gmail.com account, including the images described above. Forensic evidence indicates that during June and July 2018, the only Google account engaging in any Google Photos activity was the tsheltonchandler@gmail.com account.

23. In addition to the TonyDavisDL account, forensic analysis revealed that five additional Google accounts associated with CHANDLER (the "Target Accounts") were used on the phone:

   a. tsheltonchandler@gmail.com

   b. treylester568@gmail.com

   c. leatherneckops@gmail.com

      d.  averycountybluegrass@gmail.com

      e.  flatriverfarms@gmail.com

24.    Each of these email addresses represents a separate Google Account that was used to connect CHANDLER's phone to the Google network. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device.

25.    Forensic analysis of the phone indicates that CHANDLER was adding images, including child sexual abuse material images, to a folder in the Google Photos application in or around June and July 2018, and that the tsheltonchandler@gmail.com account was associated with a Google Photos folder called "Mmm ▮▮▮▮▮▮."

26.    Additionally, analysis of the phone revealed that CHANDLER had synced images and videos from the other four target accounts to his Google Photos, though only the file names—not the images or videos themselves—are visible. Metadata from the Google Photos application indicated that this syncing occurred between January and April 2018.

27.    Based on my training and experience, I know that individuals who view and possess child sexual abuse material images often do so through multiple accounts and platforms present on a device. Moreover, in this case, CHANDLER utilized more than one Google account to engage in the conduct under investigation: the evidence demonstrates that he used the TonyDavisDL account to communicate on Craigslist regarding the possibility of men engaging in sexual activity with ▮▮▮▮▮▮▮▮▮▮▮▮ and the tsheltonchandler account to access child sexual abuse material images. Additionally, evidence establishing who controlled the device and where the user of the device was located during the relevant time period is often contained within an individual's Google account, as discussed more thoroughly below. Therefore, there is probable cause that evidence of

the Target Offenses, including attribution and location evidence, is present in one or more of CHANDLER's Google accounts.

28. Additionally, although the Target Offenses are suspected to have occurred in 2018, subscriber information obtained from Google through an administrative subpoena indicates that the most recent login to the tsheltonchandler@gmail.com account was in or around August 2023. Subscriber information obtained from Google also indicates that the tsheltonchandler@gmail.com account is subscribed to the following Google services: Gmail, Google Photos, Google Hangouts, YouTube, Google Drive, Android, Google Calendar, Google Cloud Print, iGoogle, Google Chrome Sync, Location History, Google Maps Engine, Google My Maps, Google Payments, Blogger, Google Play Music, Web & App Activity, Is In Family, Tasks In Tingle, Google Voice, G1 Phone Backup, Google Chat.

29. Subscriber information obtained from Google through an administrative subpoena indicates that the most recent login to the flatriverfarms@gmail.com account was in or around July 2023 and that the account is subscribed to the following Google services: Web & App Activity, Gmail, Google Hangouts, Android, Google Calendar, Location History, Google Drive, YouTube, Google Chrome Sync, Google Payments, Google My Maps, Google Chat, G1 Phone Backup.

30. Subscriber information obtained from Google through an administrative subpoena indicates that the most recent login to the treylester568@gmail.com account was in or around July 2019 and subscribed to the following Google services: Gmail, Web & App Activity, Location History, Google Calendar, Android.

31. Subscriber information obtained from Google through an administrative subpoena indicates that the most recent login to the averycountybluegrass@gmail.com account was in or around July 2019 and that the account is subscribed to the following Google services: Web & App

Activity, iGoogle, Gmail, Google Calendar, Google Hangouts, Google Drive, Google Bookmarks, Google Docs, Google Services, Google Subscribed Links, Google Alerts, Blogger, YouTube, Android, Google Payments, Google Photos, Google Takeout, Google Chrome Sync, Location History, Google Cloud Print, Google Maps Engine, Google Play Music.

32.	Subscriber information obtained from Google through an administrative subpoena indicates that the most recent login to the leatherneckops@gmail.com account was in or around July 2019 and that the account is subscribed to the following Google services: Web & App Activity, Gmail, Google Hangouts, Google Calendar, Android, Location History, YouTube.

33.	As of August 2023, it appears that none of the Target Accounts have been deleted, according to subscriber information received from Google through an administrative subpoena.

34.	On August 16, 2023, a preservation letter for the Target Accounts was submitted to Google.

### C. October 2019 Interview of CHANDLER

35.	In October 2019, officers interviewed CHANDLER in Roanoke County, Virginia. During the interview, CHANDLER made the following summary statements and admissions:

   a. Officers advised CHANDLER that the interview was related to information of concern located on a telephone at his previous residence in Bedford, Virginia, specifically, a Samsung phone, which was located by CHANDLER's estranged wife in the home during her move in or around January 2019.

   b. CHANDLER acknowledged that he lived in the Bedford, Virginia residence from 2016 to 2018 and that the Samsung phone belonged to him in 2018. He advised that he left the phone at his residence when he became separated from his spouse and never retrieved it. During 2017 and 2018, he possessed and used the phone to

access the internet at his home in Bedford by connecting with mobile cellular service. He also used the phone at his home in Bedford to conduct activities described below.

c. Approximately 2 years ago (2017 and 2018), CHANDLER began placing Craigslist advertisements for men to participate in sexual conduct with his wife. He placed the advertisements in different states including Virginia, North Carolina, San Francisco, Nevada and others. CHANDLER described the advertisements as mostly fantasy and explained that no actual sexual events happened between himself, his wife or a third party. According to CHANDLER, his marriage advertisement fantasy evolved into a fantasy about other adults engaging in sexual conduct with ▮▮▮▮▮▮. He claimed that part of his sexual fantasy interests in ▮▮▮▮▮▮ was initiated by his current spouse, who also expressed a sexual interest in ▮▮▮. He advised that his ▮▮▮▮ sexual interests were purely fantasy and that he never engaged in sexual contact with ▮▮▮▮▮▮ or any minor.

d. In order to conceal his true identity, CHANDLER created the email account "TonyDavisDL@Gmail.com" and the Kik user account "TonyDavisDL." CHANDLER advised that the Tony Davis persona was entirely random and has no basis in reality. However, CHANDLER claims that his current spouse knew about his Craigslist advertisements and his sexual fantasies before they were separated. He stated that he used the Gmail and Kik accounts to communicate with persons about sexual conduct with his wife ▮▮▮▮▮▮. CHANDLER stated that some "very dangerous people" contacted him using the email and Kik accounts, who communicated ideas about extreme violence and sadistic behavior.

11

  e. CHANDLER stated that some of the people he met online sent him child pornographic images via the TonyDavisDL email account and Kik account. He could not recall the number or nature of the images. CHANDLER advised that he was not especially interested in child pornography, but he does have a predilection for communicating with persons about sexual fantasies pertaining to ▮▮▮▮▮ ▮▮▮▮▮. CHANDLER described his receipt and possession of the child pornography as a "result" of the fantasy discussions.

### D. Indictment

36. In May 2022, a federal grand jury indicted CHANDLER on one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4), based on the child sexual abuse material located on CHANDLER's phone.

### BACKGROUND CONCERNING GOOGLE[3]

37. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service

---

[3] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

38. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

39. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

40. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

41. Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription

plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes, and when changes were made, to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, they can opt to backup all the data from their device to Google Drive.

42. Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

43. Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their

Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

44. Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

45. Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to

15

save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts in to automatic deletion of their location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

46. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

47. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

48. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

49. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

50. This affidavit seeks Google Account records related to Google Drive, Google Photos, Google Maps, Location History, and Chrome and My Activity associated with the Target Accounts.

51. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. For example, evidence of child sexual abuse material images, search activity regarding child sexual abuse material, or messages regarding or containing child sexual abuse material in the Target Accounts may help establish possession, access with intent to view, or transportation of child pornography.

52. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

53. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.

Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

54. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

55. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

56. Based on the foregoing, I request that the Court issue the proposed search warrant.

57. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this
25th day of August 2023.

_____
Honorable Robert S. Ballou
UNITED STATES DISTRICT JUDGE